**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DOMINIC ZAMORA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. 4:21-cv-00875** |
| **APPRIOHEALTH, LLC AND APPRIO,** | § | |
| **INC. AND DARRYL BRITT,** | § | |
| | § | |
| **Defendants.** | § | **JUDGE KEITH P. ELLISON** |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DEREK SHAW,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. 4:21-cv-00876** |
| **APPRIOHEALTH, LLC AND APPRIO,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | § | **JUDGE KEITH P. ELLISON** |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT TREY DART, JUDE** | § | |
| **CROWELL, AND TIFFANY** | § | |
| **ECHEVARRIA,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 4:21-cv-00877** |
| **vs.** | § | |
| | § | |
| **APPRIOHEALTH, LLC AND APPRIO,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | § | **JUDGE KEITH P. ELLISON** |

## APPRIO, INC.'S AND APPRIOHEALTH, LLC'S
## FIRST AMENDED COUNTERCLAIMS

1.       Counter-Plaintiffs Apprio, Inc. and ApprioHealth, LLC[1] for their counterclaims against Dominic Zamora, Derek Shaw, Robert Trey Dart, Jude Crowell and Tiffany Echevarria, alleges as follows:

2.       Counter-Plaintiff Apprio, Inc. ("Apprio"), is a Delaware corporation with its principal place of business in Washington, D.C.

3.       Counter-Plaintiff ApprioHealth LLC ("ApprioHealth") is a Delaware limited liability company with its domicile in Florida and Maryland based on the domiciles of its component members.

4.       Counter-Plaintiffs Apprio and ApprioHealth shall be collectively referred to herein as "Apprio Parties" or "Counter-Plaintiffs."

5.       Counter-Defendant Dominic Zamora ("Zamora") was at all times material domiciled in Texas and residing at 4510 Kelliwood Park County, Katy, Texas.

6.       Counter-Defendant George Derek Shaw ("Shaw") was at all times material domiciled in Texas and residing at 12304 Winebrook Drive, Pearland, Texas 77584.

7.       Counter-Defendant Robert Trey Dart ("Dart") was at all times material domiciled in Texas and residing at 4405 Balcones Drive, Austin, Texas 78731.

8.       Counter-Defendant Tiffany Echevarria ("Echevarria") was at all times material domiciled in Florida and residing at 2332 Princetown Road, Deland, Florida 32724.

9.       Counter-Defendant Crowell ("Crowell") was at all times material domiciled in Tennessee and residing at 2527 Brittany Drive, Nashville, Tennessee 37206.

10.      Collectively, Zamora, Shaw, Dart, Echevarria, and Crowell are referred to as Counter-Defendants.

11.      This Court has personal jurisdiction over Counter-Defendants Zamora, Shaw, and Dart based on their domicile in Texas. This Court has jurisdiction over all Counter-Defendants

---

[1] Apprio and ApprioHealth file this First Amended Counterclaims, subject to and without waiver of Defendant Darryl Britt's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 8).

based on their initiation of their respective lawsuits against Counter-Plaintiffs in Harris County, Texas.

12.    As referenced in these Counterclaims, Orlando Health is a Florida company with its principal place of business in Orange County, Florida.

13.    As referenced in these Counterclaims, Community Health Systems is a foreign company, with its principal place of business in Franklin, Tennessee.

14.    As referenced in these Counterclaims, NCH Healthcare System is a Florida company with its principal place of business in Collier County, Florida.

15.    As referenced in these Counterclaims, Christus Health is a foreign company, with its principal place of business in Irving, Texas.

## I. BACKGROUND

16.    ApprioHealth and Apprio are in the business of providing services in the healthcare industry by utilizing technology to assist healthcare providers in the areas of enrollment, disability, liability, recovery, and placement services. Apprio has traditionally been in the business of providing these services to the federal government, but through its affiliate ApprioHealth, it began targeting private sector healthcare providers.

17.    Counter-Defendants all worked with Apprio and its affiliate ApprioHealth but underperformed. In light of which, ApprioHealth decided that it was necessary to terminate Counter-Defendants on or about January 15, 2020.

18.    Ironically, at that time, Zamora and Crowell were in negotiations with Apprio to potentially purchase ApprioHealth and all of its assets including, but not limited to, its customer list and prospective customer list, as well as other intellectual property, such as software programs that were configured for its business operations. Apprio, Zamora, and Crowell engaged in countless conversation about the purchase and exchanged preliminary term sheets, but in the end, Zamora and Crowell were unwilling to complete the purchase. Much to Apprio and ApprioHealth's surprise, instead of going through with this transaction with the Apprio Parties, Zamora, Crowell and Shaw as founding member-managers, along with Dart and Echevarria, as

employees, attempted to create their own version of ApprioHealth by taking ApprioHealth's information, knowhow, and pipeline of client to their newly created company, Invicta Health Solutions, LLC ("Invicta"). Despite Counter-Defendants non-competition and non-solicitation agreements, they decided to steal ApprioHealth's business and pipeline of customers (listed below) and make their own version of ApprioHealth, namely Invicta. Such acts were, among other things, clear violations of the restrictive covenants as stated in their agreements with Apprio and ApprioHealth.

## II. <u>COUNTER-DEFENDANTS EMPLOYMENT WITH APPRIOHEALTH</u>

19.     Until January 15, 2020, Zamora worked for ApprioHealth as the President of Commercial Health, Shaw worked for ApprioHealth as Division President, Dart worked for ApprioHealth as Vice President of Business Development, Crowell worked for ApprioHealth as Chief Client Officer, and Echevarria worked for ApprioHealth as Vice President of Revenue Integrity.

20.     During the time Zamora, Shaw, Dart, Crowell and Echevarria worked for ApprioHealth, they had access to, and were actively involved with various types of the Apprio Parties' Proprietary Information, including, but not limited to, the Apprio Parties' client lists and prospective client lists, as well as various other types of intellectual property (such as software programs that were configured for the Apprio Parties' business operations).

21.     Four (4) of the healthcare entities that were in the Apprio Parties' "pipeline" to provide services to were Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health.

22.     During the period Zamora, Shaw, Dart, Crowell, and Echevarria were employed with the Apprio Parties, Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were listed on the Apprio Parties' prospective client list.

23.     Zamora, Shaw, Dart, Crowell, and Echevarria was actively involved with, and had intimate knowledge of, the Apprio Parties' prospective client list during the time he was employed

with the Apprio Parties. The Apprio Parties, however, were unaware that Counter-Defendants planned to wrongfully use this information against the Apprio Parties, in violation of their agreements and the law.

24.     For instance, before leaving ApprioHealth, Crowell emailed himself documents regarding certain clients at ApprioHealth to his personal email address. *See* **Exhibits A & B**,[2] emails from Jude Crowell's ApprioHealth email to his Gmail account. Similarly, before leaving ApprioHealth, Zamora also emailed himself documents regarding certain clients at ApprioHealth to his personal email address. *See* **Exhibit C**, email from Donny Zamora's ApprioHealth email to his Gmail account.

25.     Further on February 17, 2020, a contact at prospective client, Orlando Health, asked Crowell why his team was making a "name change," and asked him to explain the rationale for the change. In his email, the client contact referenced a phone conversation on Friday, February 15, 2020, where Crowell informed the contact about the name change. Crowell had obviously communicated with this prospective client, who was close to coming to an agreement with ApprioHealth, that the company's name was merely changing and that they would continue to do the same business deal together at the new company created by Counter-Defendants, namely Invicta. *See* **Exhibit D**, email from John Mendez to Jude Crowell regarding "Name Change."

26.     On February 17, 2020, unbeknownst to Apprio or ApprioHealth, Zamora, Crowell and Shaw filed a certificate of formation as member-managers of a new limited liability company, Invicta. *See* **Exhibit E**, Certificate of Formation of Invicta Health Solutions, LLC.

### III.  ZAMORA'S AND CROWELL'S COMPENSATION PLAN AGREEMENTS

27.     While working for ApprioHealth as the President of Commercial Health, Zamora signed a contract with ApprioHealth titled ApprioHealth, LLC Incentive Compensation Plan

---

[2] In addition to redacting attorney-client communications, the Apprio Parties have redacted confidential and proprietary information in Exhibits A through D out of an abundance of caution until a protective order is in place in this matter. If requested by the Court before a protective order is in place, the Apprio Parties can also share these documents under seal.

Incentive Bonus Award Agreement (hereinafter "Zamora Compensation Plan Agreement"). A copy of the Zamora Compensation Plan Agreement is attached hereto as **Exhibit F**.

28.     While working for ApprioHealth as the Chief Client Officer, Crowell signed a contract with ApprioHealth titled ApprioHealth, LLC Incentive Compensation Plan Incentive Bonus Award Agreement (hereinafter "Crowell Compensation Plan Agreement"). A copy of the Crowell Compensation Plan Agreement is attached hereto as **Exhibit G**. Together the Zamora Compensation Plan Agreement and the Crowell Compensation Plan Agreement are referred to as "Compensation Plan Agreements."

29.     By executing the Compensation Plan Agreements, Zamora and Crowell agreed to the numerous restrictions delineated in Paragraph Numeral Seven (7) of the Compensation Plan Agreements. *See* Exhibit F & G, p. 3 at ¶7. These restrictions included but were not limited to: (1) Non-Disclosure of Confidential/Proprietary Information and Trade Secrets (*see id.* at ¶7(a)); (2) Non-Removal of Company Property (*see id.* at ¶7(b)); (3) Non-Solicitation of Covered Party Personnel (*see id.* at ¶7(e)); and (4) Non-Solicitation of Covered Party Customers (*see id.* at ¶7(f)).

30.     The Compensation Plan Agreements calls for the application of Delaware law, without regard to conflicts of laws. *See id.* p. 7, at ¶13.

### IV.  ZAMORA'S AND ECHEVARRIA'S PROPRIETARY INFORMATION AGREEMENTS WITH APPRIOHEALTH

31.     Zamora also acknowledged and agreed to be bound by the terms of the ApprioHealth, LLC Proprietary Information and Invention Assignment Agreement (hereinafter "ApprioHealth-Zamora Proprietary Information Agreement"), which is attached hereto as **Exhibit H**.

32.     Echevarria also acknowledged and agreed to be bound by the terms of the ApprioHealth, LLC Proprietary Information and Invention Assignment Agreement (hereinafter "ApprioHealth-Echevarria Proprietary Information Agreement"), which is attached hereto as **Exhibit I**. Together the ApprioHealth-Zamora Proprietary Information Agreement and

ApprioHealth-Echevarria Proprietary Information Agreement are referred to as the "ApprioHealth Proprietary Information Agreements."

33.    In the ApprioHealth Proprietary Information Agreements, Zamora and Echevarria agreed, among other things, that for the period of their respective employment with the ApprioHealth (or "**My Service**" as defined in the ApprioHealth Proprietary Information Agreements) and for **two (2) years after the Termination Date** (as defined in the ApprioHealth Propriety Information Agreements), they would not directly or through others, solicit or attempt to solicit, or hire or attempt to hire, any Employee of the Apprio Parties to become an employee, consultant, or independent contractor to or for Zamora, or any other person or entity. *See* Exhibit H & I, p. 2, ¶3.1.

34.    The ApprioHealth Proprietary Information Agreements expressly cover ApprioHealth and its subsidiaries, affiliates, successors and assigns. Because of this, the ApprioHealth Proprietary Information Agreements also covers Apprio as an affiliate of ApprioHealth. *See* Exs. H & I at p. 1. Under the ApprioHealth Proprietary Information Agreements, Apprio is a non-signatory party or, at the very least, a third party beneficiary with rights flowing from the agreement.

35.    Additionally, pursuant to the ApprioHealth Proprietary Information Agreements, Zamora and Echevarria agreed for the period of their respective employment with ApprioHealth (or "**My Service**" as defined in the ApprioHealth Proprietary Information Agreements) and for **two (2) years after the Termination Date** (as defined in the ApprioHealth Propriety Information Agreements), they would not directly or indirectly: (a) solicit, divert, appropriate to or accept on behalf of any **Competing Business** (as defined in the ApprioHealth Propriety Information Agreements); or (b) attempt to solicit, divert, appropriate to or accept on behalf of any Competing Business, any business from any **Customer** (as defined in the ApprioHealth Propriety Information Agreements, which included but was not limited to prospective customers of the Apprio Parties). *See* Exhibits H& I, p. 2, ¶3.2.

36.    The ApprioHealth Proprietary Information Agreements call for the application of Delaware law, without regard to conflicts of laws. *See id.* p. 3, at ¶11.1.

## V.  SHAW'S, DART'S, AND CROWELL'S PROPRIETARY INFORMATION AGREEMENTS WITH APPRIO

37.     While working for ApprioHealth as Division President, Shaw acknowledged and agreed to be bound by the terms of the Apprio, Inc. Proprietary Information and Invention Assignment Agreement (hereinafter "Apprio-Shaw Proprietary Information Agreement"), which is attached as **Exhibit J.**

38.     While working for ApprioHealth as Vice President of Business Development, Dart acknowledged and agreed to be bound by the terms of the Apprio, Inc. Proprietary Information and Invention Assignment Agreement (hereinafter "Apprio-Dart Proprietary Information Agreement"), attached hereto as **Exhibit K.**

39.     Crowell also acknowledged and agreed to be bound by the terms of Apprio, Inc. Proprietary Information and Invention Assignment Agreement (hereinafter "Apprio-Crowell Proprietary Information Agreement"), which is attached as **Exhibit L**.

40.     Together, the Apprio-Shaw Proprietary Information Agreement, Apprio-Dart Proprietary Information Agreement, and Apprio-Crowell Proprietary Information Agreement are collectively referred to as the "Apprio Proprietary Information Agreements."

41.     The Apprio Proprietary Information Agreements expressly cover ApprioHealth and its employees, customers, and business. The Apprio Proprietary Information Agreements state that Apprio, Inc. "together with its subsidiaries, affiliates, successors, or assigns" are the "Company." *See* Exhs. J, K,  and L at 1. Therefore, ApprioHealth's customer, employees, and business are protected by the Apprio Proprietary Information Agreements and ApprioHealth has rights pursuant to the Apprio Proprietary Information Agreements. Under the Apprio Proprietary Information

Agreements, ApprioHealth is a non-signatory party or, at the very least, a third party beneficiary with rights flowing from the agreement.

42.     In the Apprio Proprietary Information Agreements, Shaw, Dart and Crowell agreed, among other things, that for the period of their respective employment with the Apprio Parties, namely ApprioHealth, (or **My Service** as defined in the Apprio Proprietary Information Agreements) and **for <u>two (2) years after</u>** the Termination Date (as defined in the Apprio Propriety Information Agreements), they would not directly or through others, solicit or attempt to solicit, or hire or attempt to hire, any Employee of the Apprio Parties to become an employee, consultant, or independent contractor to or for themselves or any other person or entity. *See* Exhibits J, K, & L, p. 2, ¶3.1.

43.     Additionally, pursuant to the Apprio Proprietary Information Agreements, Shaw, Dart, and Crowell agreed for the period of their respective employment with the Apprio Parties, namely ApprioHealth, (or **My Service** as defined in the Apprio Proprietary Information Agreements) and **for <u>two (2) years after</u>** the Termination Date (as defined in the Apprio Propriety Information Agreements), he would not directly or indirectly: (a) solicit, divert, appropriate to or accept on behalf of any **Competing Business** (as defined in the Apprio Proprietary Information Agreements); or (b) attempt to solicit, divert, appropriate to or accept on behalf of any Competing Business, any business from any **Customer** (as defined in the Apprio Propriety Information Agreements, which included but was not limited to prospective customers of the Apprio Parties, including ApprioHealth). *See* Exhibits J, K, & L, p. 2, ¶3.2.

**VI. <u>COUNTER-DEFENDANTS' DIRECTLY COMPETING BUSINESS, INVICTA</u>**

44.     Shortly after Counter-Defendants' employment with ApprioHealth ended, they became involved with starting a new business entity, Invicta.

9

45.    In fact, the Counter-Defendants' last day working at ApprioHealth was January 15, 2020, and Shaw, Crowell and Zamora filed a certificate of formation for Invicta the shortly thereafter on Monday, February 17, 2020 with the Secretary of State in Texas.  *See* Ex. E.

46.    Prior to forming Invicta and/or contemporaneously with the formation thereof, Zamora, along with Crowell approached the Apprio Parties and unsuccessfully attempted to negotiate the transfer/purchase of ApprioHealth or its assets, including, but not limited to, its customer list and prospective customer list, as well as other intellectual property, such as software programs that were configured for its business operations. Instead of going through with this transaction with the Apprio Parties, Zamora, Crowell and Shaw copied ApprioHealth's business by taking ApprioHealth's information, knowhow, and pipeline of client to their newly created company, Invicta.

47.    Zamora, Crowell, and Dart are all listed as member-managers of Invicta on its certificate of formation. *See* Ex. E.

48.    Until recently Invicta, Zamora and Crowell's new company, touted its relationships with Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health (which were all companies in ApprioHealth's pipeline) on their website, labelling them as "collaborators." A screen capture from their website as of February 26, 2021 shows that Invicta was working directly with these customers from ApprioHealth's pipeline:

COLLABORATORS INCLUDE



  

49.     On Invicta's website, Exhibit M, Zamora's position is listed as Chief Executive Officer, Shaw is listed as Division President, Dart is listed as Vice President of Business Development, Crowell is listed Chief Client Officer, and Echevarria is listed as Vice President of Operations. Each person taking on an identical role to the one they held at ApprioHealth as shown below:

| Counter-Defendants Roles at ApprioHealth vs. Invicta | | |
|---|---|---|
| | **Role at ApprioHealth** | **Role at Invicta**[3] |
| Donny Zamora | President | Chief Executive Officer |
| Jude Crowell | Chief Client Officer | Chief Client Officer |
| Derek Shaw | Division President, Revenue Cycle Management | Division President |
| Trey Dart | Vice President of Business Development | Vice President of Business Development |
| Tiffany Echevarria | Vice President of Revenue Integrity | Vice President of Operations |

50.     Upon information and belief, Zamora, Shaw, and Crowell solicited each other, all former ApprioHealth employees, to join Invicta. Furthermore, they also solicited Dart and Echevarria, both former ApprioHealth employees, to work with them at Invicta. Zamora admits this in his Original Petition at Paragraph 40. *See* Dkt. 1, p. 20.

## VII. COUNT I

**(Breach of Contract as to the Compensation Plan Agreement –
Against Zamora and Crowell, Brought by ApprioHealth and Apprio)**

51.     Counter-Plaintiffs incorporate all foregoing and following paragraphs herein by reference.

---

[3] *See* Exhibit M, showing Counter-Defendants' roles at Invicta. The Counter-Defendants' roles at Invicta can be found on Invicta's website at https://www.invictahs.com/about-invicta-health-solutions/#leadership, accessed on May 4, 2021.

52.     This is an action for damages and injunctive relief pursuant to Paragraph Numeral 7 of the Compensation Plan Agreements.

53.     While working for ApprioHealth as the President of Commercial Health, Zamora signed a contract with the ApprioHealth, the Zamora Compensation Plan Agreement. A copy of the Zamora Compensation Plan Agreement is attached hereto as **Exhibit F.** While working for ApprioHealth as the Chief Client Officer, Crowell signed a contract with ApprioHealth, the Crowell Compensation Plan Agreement. A copy of the Crowell Compensation Plan Agreement is attached hereto as **Exhibit G.**

54.     In the Compensation Plan Agreements, both ApprioHealth and Zamora, and ApprioHealth and Crowell, made numerous covenants to each other.

55.     By executing the Compensation Plan Agreements, Zamora and Crowell agreed to the numerous restrictions delineated in Paragraph Numeral Seven (7) of the Compensation Plan Agreement. *See* Exhibits F & G, p. 3 at ¶7. These restrictions included but were not limited to: (1) Non-Disclosure of Confidential/Proprietary Information and Trade Secrets (*see id*. at ¶7(a)); (2) Non-Removal of Company Property (*see id*. at ¶7(b)); (3) Non-Solicitation of Covered Party Personnel (*see id*. at ¶7(e)); and (4) Non-Solicitation of Covered Party Customers (*see id*. at ¶7(f)).

56.     The Compensation Plan Agreements' restrictions were reasonable in time, scope, and geography.

57.     ApprioHealth performed all its obligations under the Compensation Plan Agreements.

58.     Pursuant to Paragraph Numeral 7(a) of the Compensation Plan Agreements, which is titled "Non-Disclosure of Confidential/Proprietary Information and Trade Secrets," Zamora and Crowell agreed and acknowledged that they would have access to ApprioHealth's trade secrets and confidential information, which were contractually defined as "Protected Assets."

59.     Protected Assets were defined under the Compensation Plan Agreements to include but were not limited to: "technical and non-technical data; formulas; patterns; designs; compilations; programs; methods; techniques; drawings; processes; finances; actual or potential customer and supplier information; marketing strategies; margins; prices; operations; existing and

future services; and other financial, sales, marketing, and operations information, whether written or otherwise."

60.     Under Paragraph Numeral 7(a), Zamora and Crowell promised to keep in strict confidence and trust all Protected Assets, and that he would not, directly, or indirectly, without the written consent of ApprioHealth divulge, use, appropriate, or disclose any Protected Assets.

61.     ApprioHealth has a legitimate business interest in prohibiting employees, such as Zamora and Crowell, from disclosing ApprioHealth's Protected Assets, in order to protect ApprioHealth's trade secrets and confidential information which consisted of valuable confidential business and/or professional information.

62.     Zamora and Crowell materially breached Paragraph Numeral 7(a) of the Compensation Plan Agreements through his actions of:

     a.  Immediately forming Invicta upon termination of employment with the ApprioHealth;

     b.  Soliciting, contacting, and servicing Orlando Health (which was a prospective client of ApprioHealth and which was in ApprioHealth's pipeline) and providing the same services that would have been provided by ApprioHealth without written consent;

     c.  Soliciting, contacting, and servicing Community Health Systems, Inc. (which was a prospective client of the ApprioHealth and which was in ApprioHealth's "pipeline") and providing the same services that would have been provided by ApprioHealth without written consent;

     d.  Soliciting, contacting, and servicing NCH Healthcare System (which was a prospective client of ApprioHealth and which was in ApprioHealth's "pipeline") and providing the same services that would have been provided by ApprioHealth without written consent;

     e.  Soliciting, contacting, and servicing CHRISTUS Health (which was a prospective client of ApprioHealth and which was in ApprioHealth's "pipeline") and providing the same services that would have been provided by ApprioHealth without written consent; and

f.   Using and/or continuing to use Apprio's and ApprioHealth's intellectual property, including but not limited to software programs that were configured for the ApprioHealth's business operations, as well as ApprioHealth's marketing material and information.

63.    Under Paragraph Numeral 7(b) of the Compensation Plan Agreements, which is titled "Company Property," Zamora and Crowell agreed not to remove from ApprioHealth's office or premises, for any reason, ApprioHealth's books, business records, documents, <u>customer lists</u>, employee lists, pricing information, <u>trade secrets</u>, or other confidential information without the express written permission of ApprioHealth.

64.    Additionally, under Paragraph Numeral 7(b) of the Compensation Plan Agreements, Zamora and Crowell promised not to use, cause to be used, or appropriate ApprioHealth's intellectual property to benefit a competitor, customer, individual, corporation, or other entity without the express written permission of ApprioHealth.

65.    ApprioHealth has a legitimate business interest in prohibiting employees, such as Zamora and Crowell, from removing and/or using ApprioHealth's property which consisted of valuable confidential business and/or professional information.

66.    Zamora and Crowell, materially breached Paragraph Numeral 7(b) of the Compensation Plan Agreements through their respective actions; specifically, by utilizing information from the Apprio Parties' prospective customer list, meaning Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health, which were in ApprioHealth's "pipeline," to benefit themselves and their recently formed company, Invicta (which is a direct competitor of ApprioHealth), and by using and/or continuing to use the Apprio Parties' intellectual property/proprietary information, including but not limited to software programs that were configured for the Apprio Parties' business operations, as well as ApprioHealth's marketing material and information.

67.    Through the scope of Zamora's and Crowell's employment and work with ApprioHealth, they knew about the time, resources, and effort exerted by ApprioHealth to develop their customer list and "pipeline," which included Orlando Health, Community Health Systems,

14

NCH Healthcare System, and CHRISTUS Health, as well as the time, resources, and effort exerted by ApprioHealth to develop its intellectual property/proprietary information.

68.     Upon leaving their employment with ApprioHealth, Zamora and Crowell used this proprietary information to contact, solicit, and service these entities, in order to benefit themselves and Invicta, all of which constituted material breaches of the Compensation Plan Agreements.

69.     Under Paragraph Numeral 7(c) of the Compensation Plan Agreements, which is titled "Discoveries, Inventions & Processes," Zamora and Crowell agreed, that "all discoveries, inventions, processes, designs, plans, and trade secrets, whether of a technical nature or not . . . shall be the sole and exclusive property of ApprioHealth, LLC."

70.     Moreover, Zamora and Crowell agreed *not* to use or disclose the ApprioHealth's discoveries, inventions, and processes to benefit a competitor, customer, individual, or other entity, without the express written consent of ApprioHealth.

71.     ApprioHealth has a legitimate business interest in prohibiting employees, such as Zamora and Crowell, from using or disclosing this information in order to protect ApprioHealth's trade secrets and confidential information which consisted of valuable confidential business and/or professional information.

72.     Zamora and Crowell materially breached Paragraph Numeral 7(c) of the Compensation Plan Agreements through their actions; specifically, by utilizing ApprioHealth's discoveries, inventions, and processes to create and operate a mirror entity—Invicta—which provides the same services as ApprioHealth.

73.     Zamora and Crowell materially breached Paragraph Numeral 7(c) of the Compensation Plan Agreements by contacting, soliciting, and servicing ApprioHealth's prospective clients, including but not limited to Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health, and providing ApprioHealth's prospective clients the same services that ApprioHealth's intended to provide them.

74.     Zamora and Crowell materially breached Paragraph Numeral 7(c) of the Compensation Plan Agreements by using ApprioHealth's intellectual property, including but not limited to software programs that were configured for ApprioHealth's business operations, as well

as ApprioHealth's marketing material and information for the benefit of Invicta, a direct competitor of ApprioHealth.

75.    Under Paragraph Numeral 7(e) of the Compensation Plan Agreements, which is titled "Non-Solicitation of Covered Party Personnel," Zamora and Crowell agreed, among other things, that for the period of their employment with ApprioHealth and for two (2) years after the termination of his services to ApprioHealth, they would not directly or indirectly, hire as an employee or independent contractor any "Covered Party Personnel," or encourage, induce, attempt to induce, solicit or attempt to solicit any "Covered Party Personnel" to terminate his or her services with ApprioHealth.

76.    ApprioHealth has a legitimate business interest in prohibiting employees, such as Zamora and Crowell, from soliciting, inducing, attempting to solicit, or hiring employees of ApprioHealth in order to protect ApprioHealth's ability to carry out its business through the employment of its specialized and skilled employees and/or because of the extraordinary and/or specialized training provided by ApprioHealth to its employees.

77.    Zamora and Crowell materially breached Paragraph Numeral 7(e) of the Compensation Plan Agreements through their respective actions; specifically, by openly soliciting, and continuing to solicit, ApprioHealth's employees who qualified as 'Covered Party Personnel," including, but not limited to Jude Crowell, Christine Jones, George "Derek" Shaw, Robert "Trey" Dart, Rodney Napier, and Tiffany Echevarria.

78.    Zamora and Crowell materially breached Paragraph Numeral 7(e) by soliciting, and hiring these individuals to become employees of Invicta, which by design, is a direct competitor of ApprioHealth.

79.    Under Paragraph Numeral 7(f) of the Compensation Plan Agreements, which is titled "Non-Solicitation of Covered Party Customers," Zamora and Crowell agreed for the period of their respective employment with ApprioHealth and for two (2) years after the termination of their services to ApprioHealth, they would not directly or indirectly: (a) solicit, divert, appropriate to or accept on behalf of any Competing Business (as defined in the Compensation Plan

Agreements); or (b) attempt to solicit, divert, appropriate to or accept on behalf of any Competing Business, any business from any **Customer**.

80.     The term "Customer" is defined in Paragraph Numeral 7(f) to mean any existing customer of the Apprio Parties or any prospective customer of the Apprio Parties who is documented on a prospective list.

81.     Invicta is a Competing Business, pursuant to the definition set forth in Paragraph Numeral 7(f), because it develops, markets, manufactures, sells, distributes, and/or profits from products or services that are in competition with a business activity of ApprioHealth.

82.     Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were "Customers" of ApprioHealth, because they were prospective customers of ApprioHealth and were documented on ApprioHealth's prospect list, which Zamora and Crowell had intimate knowledge of and involvement with during the time they were employed with ApprioHealth.

83.     ApprioHealth and Apprio have a legitimate business interest in prohibiting employees, such as Zamora, from soliciting or accepting on behalf of a Competing Business the business of a Customer in order to protect ApprioHealth's substantial relationships and/or business efforts with respect to specific prospective and/or existing clients.

84.     Zamora and Crowell materially breached Paragraph Numeral 7(f) of the Compensation Plan Agreements because within two years of their respective employment with ApprioHealth when they, inter alia, solicited, appropriated, and/or accepted on behalf of Invicta, which is a "Competing Business" of ApprioHealth, business from Customers of ApprioHealth in violation of Paragraph Numeral 7(f) as evidenced by Invicta's actions of contacting, soliciting, and servicing Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health as its customers.

85.     Zamora's and Crowell's breaches of the Compensation Plan Agreements caused damage to ApprioHealth, by preventing ApprioHealth and Apprio from completing certain business deals with the enumerated clients.

86.    Zamora's and Crowell's breaches of the Compensation Plan Agreements has and continues to cause the Apprio Parties irreparable harm which is presumed pursuant to the Compensation Plan Agreements.

87.    The Apprio Parties have retained counsel and are entitled to an award of reasonable attorneys' fees and costs.

88.    WHEREFORE, for the foregoing reasons, ApprioHealth and Apprio requests that the Court grant it the following relief:

    a.    A preliminary and permanent injunction against Zamora and Crowell to cease the above-referenced violations, including but not limited to enjoining him from providing services to Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health, from using or otherwise disclosing the Apprio Parties' confidential information and trade secrets, from using the Apprio Parties' property without written consent, and from soliciting and/or otherwise employing the Apprio Parties' employees as set forth in the Compensation Plan Agreements;

    b.    An Award of reasonable attorneys' fees and costs;

    c.    All compensatory damages authorized by law, including, but not limited to lost profits, interest, costs and attorneys' fees; and

    d.    Any other and further relief as the Court deems just and equitable.

## VIII. <u>COUNT II</u>

**(Breach of Contract as to the ApprioHealth Proprietary Information and Assignment of Inventions Agreement –**
**Against Zamora and Echevarria, brought by ApprioHealth and Apprio)**

89.    Apprio and ApprioHealth incorporate all foregoing and following paragraphs herein by reference.

90.    This is an action for damages and injunctive relief pursuant to Paragraph Numeral 8 of the ApprioHealth Proprietary Information Agreements.

91.    While working for ApprioHealth as the President of Commercial Health, Zamora

acknowledged and agreed to be bound by the terms of the ApprioHealth-Zamora Proprietary Information Agreement". *See* Ex. H.

92.     Echevarria also acknowledged and agreed to be bound by the terms of the ApprioHealth-Echevarria Proprietary Information Agreement. *See* Exh. I.

93.     The ApprioHealth Proprietary Information Agreements expressly cover Apprio and its employees, customers, and business. The ApprioHealth Proprietary Information Agreements state that ApprioHealth, LLC. "together with its subsidiaries, affiliates, successors, or assigns" are the "Company." *See* Exs. H & I at 1. Therefore, Apprio's customer, employees, and business are protected by the ApprioHealth Proprietary Information Agreements and Apprio has rights pursuant to the ApprioHealth Proprietary Information Agreements. Because ApprioHealth is an affiliate of Apprio, Apprio is a non-signatory party or, at the very least, a third party beneficiary of the ApprioHealth Proprietary Information Agreements.

94.     ApprioHealth performed all of its obligations under the ApprioHealth Proprietary Information Agreements.

95.     Pursuant to Paragraph Numeral 3.1 of the ApprioHealth Proprietary Information Agreements, Zamora and Echevarria agreed that for the period of their respective employment with ApprioHealth and for two (2) years after the termination of his employment with ApprioHealth, they would not directly or through others, solicit or attempt to solicit, or hire or attempt to hire, any Employee of the Apprio Parties to become an employee, consultant, or independent contractor to or for themselves or any other person or entity. *See* Exs. H & I, p. 2, ¶3.1.

96.     ApprioHealth has a legitimate business interest in prohibiting employees, such as Zamora and Echevarria, from soliciting, inducing, attempting to solicit, or hiring employees of

ApprioHealth in order to protect ApprioHealth's ability to carry out its business through the employment of its specialized and skilled employees and/or because of the extraordinary and/or specialized training provided by ApprioHealth to its employees.

97.      Zamora and Echevarria materially breached Paragraph Numeral 3.1 of the ApprioHealth Proprietary Information Agreements through their actions; specifically, by **openly soliciting, and continuing to solicit, the Apprio Parties' employees** including, but not limited to Jude Crowell, Christine Jones, George "Derek" Shaw, Robert "Trey" Dart, and Rodney Napier.

98.      Pursuant to Paragraph Numeral 3.2 of the ApprioHealth Proprietary Information Agreements, Zamora and Echevarria agreed for the period of their employment with ApprioHealth (or **My Service** as defined in the Proprietary Information Agreement) and for two (2) years after the Termination Date (as defined in the ApprioHealth Propriety Information Agreements), they would not directly or indirectly: (a) solicit, divert, appropriate to or accept on behalf of any Competing Business (as defined in the ApprioHealth Propriety Information Agreement); or (b) attempt to solicit, divert, appropriate to or accept on behalf of any Competing Business, any business from any Customer (as defined in the ApprioHealth Propriety Information Agreements, which included but was not limited to prospective customers of the ApprioHealth). *See* Exs. H & I, p. 2, ¶3.2.

99.      The term "Customer" is defined as "any customer or **actively sought prospective customer** of [the Apprio Parties] . . . ." (Emphasis added).

100.     Invicta is a Competing Business of ApprioHealth because it develops, markets, manufactures, sells, distributes, and/or profits from products or services that are in competition with a business activity of ApprioHealth.

101.     ApprioHealth has a legitimate business interest in prohibiting employees, such as

Zamora and Echevarria from soliciting or accepting on behalf of a Competing Business the business of a Customer in order to protect ApprioHealth's substantial efforts invested to develop prospective and/or existing clients.

102.    Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were "**Customers**" of ApprioHealth pursuant to the ApprioHealth Proprietary Information Agreements because they were prospective customers of ApprioHealth that were actively sought by ApprioHealth and over which Zamora and Echevarria obtained Proprietary Information about during their respective employment with ApprioHealth.

103.    The definition of Proprietary Information in the ApprioHealth Proprietary Information Agreements includes lists of actual or potential customers of ApprioHealth.

104.    Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were on the Apprio Parties' prospective lists of potential customers during the time Zamora was employed with the Apprio Parties and which he had intimate knowledge of Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were Customers as defined in the ApprioHealth Proprietary Information Agreements.

105.    Zamora and Echevarria materially breached Paragraph Numeral 3.2 of the ApprioHealth Proprietary Information Agreements through their actions; specifically by soliciting, appropriating, and/or accepting on behalf of Invicta, which is a Competing Business of ApprioHealth, business from Customers of ApprioHealth in violation of Paragraph Numeral 3.2 as evidenced by Invicta's actions of contacting, soliciting, and servicing Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health as its customers.

106.    Zamora's and Echevarria's breaches of the ApprioHealth Proprietary Information Agreement caused damage to ApprioHealth.

107.     Zamora's and Echevarria's breaches of the ApprioHealth Proprietary Information Agreements has and continues to cause the Apprio Parties irreparable harm which is presumed pursuant to the ApprioHealth Proprietary Information Agreements.

108.     Paragraph Numeral 11.7 of the ApprioHealth Proprietary Information Agreements authorizes an award of attorneys' fees and costs in light of ApprioHealth having to initiate the present Action to enforce its rights under said Agreement.

109.     The Apprio Parties have retained counsel and are entitled to an award of reasonable attorneys' fees and costs.

110.     **WHEREFORE**, for the foregoing reasons, ApprioHealth and Apprio request that the Court grant it the following relief:

a.   A temporary and permanent injunction against Zamora and Echevarria to cease the above-referenced violations, including but not limited to enjoining them from providing services to Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health, and from soliciting and/or otherwise employing the Apprio Parties' employees as set forth in the ApprioHealth Proprietary Information Agreements for the duration of their restrictive covenants contained therein;

b.   An Award of reasonable attorneys' fees and costs under Paragraph Numeral 11.7 of the ApprioHealth Proprietary Information Agreements;

c.   All compensatory damages authorized by law, including, but not limited to, lost profits, interest, costs and attorneys' fees; and

d.   Any other and further relief as the Court deems just and equitable.

## IX. COUNT III

**(Breach of Contract as to the Apprio Proprietary Information and Assignment of
Inventions Agreement –
Against Shaw, Dart and Crowell, brought by Apprio and ApprioHealth)**

111.    Counter-Plaintiffs incorporate all foregoing and following paragraphs herein by
reference.

112.    This is an action for damages and injunctive relief pursuant to Paragraph Numeral
8 of the Apprio Proprietary Information Agreements.

113.    While working for ApprioHealth, an affiliate of Apprio, Shaw, Dart and Crowell
each individually acknowledged and agreed to be bound by the terms of the Apprio, Inc.
Proprietary Information and Assignment of Inventions Agreement ("Apprio Proprietary
Information Agreements"). *See* Ex. J (Apprio-Shaw Proprietary Information Agreement), Ex. K
(Apprio-Dart Proprietary Information Agreement), and Ex. L (Apprio-Crowell Proprietary
Information Agreement).

114.    The Apprio Proprietary Information Agreements expressly cover ApprioHealth and
its employees, customers, and business. The Apprio Proprietary Information Agreements state that
Apprio, Inc. "together with its subsidiaries, affiliates, successors, or assigns" are the "Company."
*See* Exs. J, K, & L at 1. Therefore, ApprioHealth's customer, employees, and business are
protected by the Apprio Proprietary Information Agreements and ApprioHealth has rights pursuant
to the Apprio Proprietary Information Agreements. Under the Apprio Proprietary Information
Agreements, because ApprioHealth is an affiliate of Apprio, ApprioHealth is a non-signatory party
or, at the very least, a third party beneficiary of the agreement.

115.    Apprio and ApprioHealth performed all their respective obligations under the
Proprietary Information Agreements.

116.    Pursuant to Paragraph Numeral 3.1 of the Apprio Proprietary Information

Agreements, Dart, Shaw and Crowell agreed that for the period of their employment with ApprioHealth and for two (2) years after the termination of their respective employment with ApprioHealth, they would not directly or through others, solicit or attempt to solicit, or hire or attempt to hire, any Employee of the Apprio Parties to become an employee, consultant, or independent contractor to or for themselves or any other person or entity. See Exhibits J, K, & L, ¶3.1.

117.    The Apprio Parties have a legitimate business interest in prohibiting employees, such as Dart, Shaw and Crowell, from soliciting, inducing, attempting to solicit, or hiring employees of the Apprio Parties in order to protect the Apprio Parties' ability to carry out their business through the employment of their specialized and skilled employees and/or because of the extraordinary and/or specialized training provided by the Apprio Parties to their employees.

118.    Dart, Shaw and Crowell materially breached Paragraph Numeral 3.1 of the Apprio Proprietary Information Agreements through their actions; specifically, by openly soliciting, and continuing to solicit, ApprioHealth's employees including, but not limited to the other respective Counter-Defendants.

119.    Pursuant to Paragraph Numeral 3.2 of the Apprio Proprietary Information Agreements, Dart, Shaw and Crowell agreed for the period of their employment with ApprioHealth (or **My Service** as defined in the Apprio Proprietary Information Agreements) and for two (2) years after the Termination Date (as defined in the Apprio Propriety Information Agreements), they would not directly or indirectly: (a) solicit, divert, appropriate to or accept on behalf of any Competing Business (as defined in the Apprio Propriety Information Agreements); or (b) attempt to solicit, divert, appropriate to or accept on behalf of any Competing Business, any business from any Customer (as defined in the Apprio Propriety Information Agreements, which included but was

not limited to prospective customers of Apprio and ApprioHealth). See Exhibits J, K, &L, ¶3.2.

120.    The term "Customer" is defined as "any customer or **actively sought prospective customer** of [the Apprio Parties] . . . ." (Emphasis added).

121.    Invicta is a Competing Business of ApprioHealth because it develops, markets, manufactures, sells, distributes, and/or profits from products or services that are in competition with a business activity of ApprioHealth.

122.    The Apprio Parties have a legitimate business interest in prohibiting employees, such as Counter-Defendants, from soliciting or accepting on behalf of a Competing Business the business of a Customer in order to protect the Apprio Parties' substantial efforts invested to develop prospective and/or existing clients.

123.    Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were "Customers" of ApprioHealth because they were prospective customers of the ApprioHealth that were actively sought by ApprioHealth and over which Dart, Shaw and Crowell obtained Proprietary Information about during their respective employment with ApprioHealth.

124.    The definition of Proprietary Information in the Apprio Proprietary Information Agreement includes lists of actual or potential customers of the Apprio Parties, including ApprioHealth.

125.    Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were on ApprioHealth's prospective lists of potential customers during the time Dart, Shaw, and Crowell were employed with ApprioHealth and which they had intimate knowledge of Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health were Customers as defined in the Apprio Proprietary Information Agreements.

126.    Dart, Shaw and Crowell materially breached Paragraph Numeral 3.2 of the Apprio Proprietary Information Agreements through their actions; specifically by soliciting, appropriating, and/or accepting on behalf of Invicta, which is a Competing Business of ApprioHealth, business from Customers of ApprioHealth in violation of Paragraph Numeral 3.2 as evidenced by Invicta's actions of contacting, soliciting, and servicing Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health as its customers.

127.    Dart, Shaw, and Crowell's breaches of the Apprio Proprietary Information Agreements caused damage to Apprio and ApprioHealth.

128.    Dart, Shaw and Crowell's breaches of the Apprio Proprietary Information Agreements has and continues to cause the Apprio Parties irreparable harm which is presumed pursuant to the Proprietary Information Agreement.

129.    Paragraph Numeral 11.7 of the Apprio Proprietary Information Agreements authorizes an award of attorneys' fees and costs in light of the Apprio Parties having to initiate the present Action to enforce their rights under said Agreement.

130.    The Apprio Parties have retained counsel and are entitled to an award of reasonable attorneys' fees and costs.

131.    WHEREFORE, for the foregoing reasons, Counter-Plaintiffs, Apprio and ApprioHealth, request that the Court grant them the following relief:

        a.    A preliminary and permanent injunction against Counter-Defendants to cease the above-referenced violations, including but not limited to enjoining them from providing services to Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health, and from soliciting and/or otherwise employing the Apprio Parties' employees as set forth in the Apprio Proprietary Information Agreements for the duration of the restrictive covenants;

b.      An award of reasonable attorneys' fees and costs under Paragraph Numeral 11.7 of the Apprio Proprietary Information Agreements;

c.      All compensatory damages authorized by law, including, but not limited to, lost profits, interest, costs and attorneys' fees; and

d.      Any other and further relief as the Court deems just and equitable.

## X. COUNT IV

**(Violation of the Texas Uniform Trade Secrets Act –
Against Zamora, Shaw, Dart, Crowell, and Echevarria)**

132.    Counter-Plaintiffs incorporate all foregoing and following paragraphs herein by reference.

133.    The Texas Uniform Trade Secret Act, TEX. CIV. PRAC. & REM. CODE § 134A.001 *et seq*., (the "Act") provides a remedy against Counter-Defendants for their actual and threatened improper use of ApprioHealth's and Apprio's trade secrets. Apprio and ApprioHealth's Proprietary Information rises to the level of trade secrets under the Act, and Apprio and ApprioHealth's trade secrets have been misappropriated by Counter-Defendants.

134.    The Apprio Parties' Proprietary Information regarding its business, products, product development, software, and customer relationships qualify as trade secrets. Indeed, similar information has been afforded trade secret status under the Act, which defines a trade secret as information that:

(a) derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(A), (B).

27

Additionally, the Texas Supreme Court set forth the following six factors which "may be useful to district courts in determining whether [certain information] constitutes a trade secret":

> (1) the extent to which the information is known outside of the business; (2) the extent to which the information is known to employees and others involved in its business; (3) the extent of measures taken by the business to guard the secrecy of its information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease with which the information could be acquired or duplicated by others.

*In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). The Apprio Parties' proprietary financial information, product and product development information, business methods, and its customer relationship information (among many other types of information Counter-Defendants took) all constitute trade secrets under the Act and the Texas Supreme Court's standards.

135.    As discussed above, the Apprio Parties' maintains Proprietary Information relating to its pipeline of customers and potential customers. This information, over time, helps the Apprio Parties maintain and grow those customer relationships in an efficient, cost-effective and successful fashion that its competitors cannot duplicate. The Apprio Parties also maintains confidential information concerning its financial arrangements, employee information, product and product development information, internal information such as the Apprio Parties' own price points, key personnel, vendor costs, etc.

136.    Compiling and maintaining such information provides the Apprio Parties with a competitive advantage that allows it to better serve its customers in the market. The information is not generally known and is valuable as a result, and would give any of the Apprio Parties' competitors an unfair competitive advantage.

137.    Because of the value of the information, which the Apprio Parties' have spent a significant amount of time and invested substantial resources developing, the Apprio Parties

28

restrict access to such information and requires that it be kept strictly confidential by its employees. The Apprio Parties employ a number of measures to protect against its disclosure such as limiting access to information to only employees with a need to know; password protecting its computers; issuing key cards to limit access to certain areas of its distribution centers and headquarters, terminating access to proprietary information at the conclusion of employment, and requiring its employees to sign nondisclosure, nonsolicitation and, in some cases, noncompetition agreements.

138.    If Counter-Defendants are allowed to retain, use, and/or disclose the Apprio Parties' trade secret information, the Apprio Parties will be irrevocably harmed.

139.    **WHEREFORE**, for the foregoing reasons, Counter-Plaintiffs, Apprio and ApprioHealth, request that the Court grant them the following relief:

    a.  All compensatory damages authorized by law, including, but not limited to, lost profits, disgorgement of profits, interest, costs and attorneys' fees; and

    b.  Any other and further relief as the Court deems just and equitable.

## XI. COUNT V

### (Civil Conspiracy-
### Against Zamora, Shaw, Dart, Crowell, and Echevarria)

140.    Counter-Plaintiffs incorporate all foregoing and following paragraphs herein by reference.

141.    A civil conspiracy occurs when (1) a defendant is a member of a combination of two or more persons, (2) the object of the combination was to accomplish either an unlawful purpose or a lawful purpose by unlawful means, (3) the members had a meeting of the minds on the object or course of action, (4) one of the members committed an unlawful, overt act to further the object or course of action, and (5) the plaintiff suffered an injury as a proximate result of the wrongful act.

142.    Zamora, Shaw, Dart, Crowell, and Echevarria are members of a combination of two or more persons.

143.    Zamora, Shaw, Dart, Crowell, and Echevarria together as co-conspirators ("co-conspirators"), reached an agreement among and between themselves to directly compete against their former employer, ApprioHealth, and steal the client relationships that ApprioHealth was developing for themselves. Not only was their purpose unlawful, because to compete with ApprioHealth, the co-conspirators would be breaching their respective agreements not to compete and not to solicit ApprioHealth's pipeline of customers, they also undertook unlawful means to complete this purpose. The means taken for achieve this purpose required Zamora, Shaw, Dart, Crowell and Echevarria to breach their respective agreements with the Apprio Parties, tortiously interfere with the Apprio Parties' business relationships with certain parties, (namely, Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health, among others), and misappropriate ApprioHealth's trade secrets in order to unlawfully compete with ApprioHealth. The co-conspirators combined for this unlawful purpose, which they intended to achieve through unlawful means.

144.    The co-conspirators had a meeting of the minds to create their agreement, as evidenced by Invicta's own website showing that Zamora, Shaw, Dart, Crowell and Echevarria are all currently working together as a team at Invicta. *See* Ex. M, Screen capture from Invicta's website showing its leadership team. Furthermore, the conspiracy between Zamora, Shaw and Crowell is evidenced by their filing a certificate of formation for Invicta immediately after leaving ApprioHealth's employ. *See* Ex. E.

145.    To accomplish their agreement, the co-conspirators registered Invicta and provided false and misleading information to the Apprio Parties while they were still employed by the Apprio Parties regarding the work they were doing for the Apprio Parties, while they were instead, collecting business relationships to use for their future competing business, Invicta. On information and belief, to further accomplish their agreement, the co-conspirators deleted work files and emails to conceal their deception from the Apprio Parties and attempted to remove critical work files and emails containing the Apprio Parties' proprietary information. Additionally, to

accomplish their agreement, the co-conspirators misappropriated the Apprio Parties' trade secrets in furtherance of their agreement and work for Invicta.

146.    The co-conspirators coordinated among themselves to mislead the Apprio Parties. The co-conspirators coordinated among themselves to delete and misappropriate the Apprio Parties' proprietary information. The co-conspirators intended to unlawfully obtain financial gain through their false statements and fraudulent and the illegal conduct.

147.    As a result, the Apprio Parties have incurred damages as a result due to the loss of business relationships and the loss of their proprietary information and trade secrets.

148.    WHEREFORE, for the foregoing reasons, Counter-Plaintiffs, Apprio and ApprioHealth, request that the Court grant them the following relief:

      a.   All compensatory damages authorized by law, including, but not limited to, lost profits, interest, costs and attorneys' fees; and

      b.   Any other and further relief as the Court deems just and equitable.

## XII. COUNT VI

### (Tortious Interference With Prospective Customer Relationships- Against Zamora, Shaw, Dart, Crowell, and Echevarria)

149.    Counter-Plaintiffs incorporate all foregoing and following paragraphs herein by reference.

150.    As outlined in the foregoing paragraphs, Zamora, Shaw, Dart, Crowell, and Echevarria, were negotiating customer relationships for ApprioHealth, including with Orlando Health, Community Health Systems, NCH Healthcare System, and CHRISTUS Health, among others. With a reasonable probability, the Apprio Parties had and would have entered into contractual relationships with these entities.

151.    Zamora, Shaw, Dart, Crowell, and Echevarria acted maliciously and intentionally by interfering with ApprioHealth's existing and potential relationships with prospective customers, with the purpose of harming ApprioHealth.

152.    They interfered with these prospective business relationships through their independently unlawful conduct: namely by: (1) breaching their respective agreements with the Apprio Parties, the Compensation Plan Agreements, the ApprioHealth Proprietary Information Agreements, and the Apprio Proprietary Information Agreements; (2) causing their co-conspirators to breach their agreements with the Apprio Parties; (3) misappropriating the Apprio Parties' trade secrets; and (4) breaching their fiduciary duties to ApprioHealth. This conduct is independently tortious and unlawful.

153.    The co-conspirators all had knowledge of these agreements between the Apprio Parties and their co-conspirators. Furthermore, Zamora had knowledge of the prospective customer relationships (and prospective agreements) of the Apprio Parties and the terms of those relationships.

154.    The co-conspirators planned and prepared to form Invicta, and engaged in actions based on his discussions with the co-conspirators in order to effectuate the plans and preparations discussed between them, and then hired the co-conspirators all in an attempt to unfairly compete with the Apprio Parties and move business that would otherwise be handled by the Apprio Parties to Invicta.

155.    The co-conspirators interference with ApprioHealth's prospective business relationships caused ApprioHealth to lose the prospective business ApprioHealth sought to obtain with those prospective customers, including some prospective customers that were in the final stages of signing on.

156.    Zamora, Shaw, Dart, Crowell, and Echevarria unlawfully threaten and are causing harm to the goodwill that the Apprio Parties have built up over many years with its employees and clients and unlawfully intrudes upon the Apprio Parties' proprietary information and prospective and existing contractual relationships with customers, with its now former employees and current employees; and has caused economic damage through loss of business relationships.

157.    **WHEREFORE**, for the foregoing reasons, Counter-Plaintiffs, Apprio and ApprioHealth, request that the Court grant them the following relief:

a. All compensatory damages authorized by law, including, but not limited to, lost profits, interest, costs and attorneys' fees; and

b. Any other and further relief as the Court deems just and equitable.

## XIII. COUNT VII

**(Breach of Fiduciary Duty-**
**Against Zamora, Shaw, Dart, Crowell, and Echevarria, brought by ApprioHealth)**

158.    Counter-Plaintiffs incorporate all foregoing and following paragraphs herein by reference.

159.    A breach of fiduciary duty occurs when (1) the plaintiff and defendant have or had a fiduciary relationship, (2) the defendant breached its fiduciary duty owed to the plaintiff, and (3) the defendant's breach proximately caused injury to the plaintiff or resulted in a benefit to the defendant.

160.    Zamora, Shaw, Dart, Crowell, and Echevarria are former employees of ApprioHealth, and ApprioHealth is the former employer of Zamora, Shaw, Dart, Crowell, and Echevarria. There is therefore a formal fiduciary duty arising from the former employment relationship, and Zamora, Shaw, Dart, Crowell, and Echevarria owe ApprioHealth duties to not to use or divulge confidential or trade-secret information of ApprioHealth to its detriment, as required by the common law as well as the restrictive covenants that bound them to treat Apprio's information as proprietary. On information and belief, Zamora, Shaw, Dart, Crowell, and Echevarria have violated this duty by using or divulging confidential or trade-secret information of ApprioHealth to its detriment. Indeed, Crowell and Zamora forwarded themselves information from ApprioHealth's email system before resigning. *See* Exs. A-C.

161.    These breaches are proximately causing irreparable injuries to ApprioHealth, and are substantially likely to continue causing irreparable injuries to ApprioHealth unless enjoined, and are resulting in a benefit to Zamora, Shaw, Dart, Crowell, and Echevarria.

162.    **WHEREFORE**, for the foregoing reasons, Counter-Plaintiffs, Apprio and ApprioHealth, request that the Court grant them the following relief:

33

a.  All compensatory damages authorized by law, including, but not limited to, lost profits, disgorgement of profits, interest, costs and attorneys' fees; and

b.  Any other and further relief as the Court deems just and equitable.

Dated: May 4, 2021                          Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: */s/ Theresa Wanat*
    Theresa Wanat
    Texas Bar No. 24071469
    Federal ID No. 3063740
    Theresa.wanat@hklaw.com
    1100 Louisiana Street, Suite 4300
    Houston, TX 77002
    (713) 821-7000 (Main)
    (713) 821-7001 (Fax)

    Sara Schretenthaler Staha
    Texas Bar No. 24088368
    Sara.staha@hklaw.com
    200 Crescent Court, Suite 1600
    Dallas, TX 75201
    (214) 964-9500 (Main)
    (214) 964-9501 (Fax)

**COUNSEL FOR APPRIOHEALTH, LLC, APPRIO, INC. AND DARRYL BRITT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing instrument was served on all known counsel of record on May 4, 2021, via the Court's ECF system.


*/s/ Theresa Wanat*
Theresa Wanat